**Salem**

HERCULES, INC., et al.

v.

GEORGE M. GUNTHER

No. 0175-91-1

Decided December 3, 1991

358

COUNSEL

Linda Davis Frith (Melissa Warner Scoggins; Gentry, Locke, Rakes & Moore, on brief), for appellant.

Jim H. Guynn, Jr. (Parvin, Wilson, Barnett & Hopper, P.C., on brief), for appellee.

OPINION

COLEMAN, J.—Appellants, Hercules, Inc. and Insurance Company of North America, contend that the Workers' Compensation Commission* erred in awarding compensation benefits to George M. Gunther, appellee, for a post-traumatic stress disorder because the evidence failed to establish an "injury by accident" as required by Code § 65.1-7. Credible evidence exists to support the commission's finding that the psychological injury which George Gunther suffered was causally related to an obvious sudden shock or fright arising in the course of his employment. Thus, we affirm the decision of the commission.

On March 19, 1988, George Gunther, a power plant truck driver employed by Hercules, Inc., was delivering rocket propellant to Building 16 at the Hercules plant located in Radford, Virginia. As Gunther began walking toward Building 16, it exploded. He was lifted off his feet and propelled into a nearby barricade. Two of his friends, with whom he had been talking just prior to the explosion, were killed in the incident. Gunther sustained minor physical injuries in the explosion, including of a sprain of his right thumb and some irritation of his throat and lungs caused by the inhalation of smoke and fumes. After the ex-

---

* Formerly the Industrial Commission of Virginia. Effective October 1, 1991, Title 65.1 was recodified as Title 65.2. All references in this opinion are to Title 65.1, in effect at the time the commission's decision was rendered in this case.

plosion, he was treated by Dr. O. F. Salinas, a physician at the Hercules clinic, and by physicians at the Radford Hospital emergency room. Gunther reported to the doctors that immediately after the explosion, he felt "very, very bad" about the death of his friends and that he was "scared and worried."

Gunther returned to work the day after the explosion. On April 20, 1988, approximately one month later, he again visited Dr. Salinas and told Dr. Salinas that he was still trying to cope with the death of his friends and the explosion, that he had used almost all of his vacation time since the explosion, and that he was very nervous and unable to relax. In order to provide Gunther treatment for his emotional reaction to the events caused by the explosion, Dr. Salinas offered him a panel of psychiatrists from which to select a treating physician. Gunther chose Dr. Basil Roebuck of Radford, Virginia.

Gunther first saw Dr. Roebuck on April 21, 1988, at which time he reported experiencing anxiety and recurring thoughts of the explosion. Gunther acknowledged to Dr. Roebuck that he already had considerable stress upon him stemming from the financial burden of supporting his child and former wife. Dr. Roebuck referred Gunther to Dr. Carl McGraw, Ph.D., Director of Psychological Services at Saint Albans Psychiatric Hospital, for additional assessment.

In a letter dated August 16, 1989, Dr. McGraw wrote, "Our diagnosis was, and still is, Post Traumatic Stress Disorder, Severe. . . . It is our feelings that his problems still relate back, in a very significant way, to his brush with death in March of 1988."

Gunther continued under the treatment of Dr. Roebuck and Dr. McGraw as an out-patient. His condition did not improve. On September 27, 1989, he was admitted to Saint Albans Psychiatric Hospital, where he was tentatively diagnosed by Dr. Roebuck as suffering from post-traumatic stress disorder (PTSD). On October 11, 1989, he was discharged from Saint Albans with a positive diagnosis of having PTSD.

On October 5, 1989, Gunther, by counsel, filed a letter application for a hearing before the Workers' Compensation Commission, alleging an injury by accident stemming from the March 19, 1988, explosion. Thereafter, he filed a second applica-

tion, alleging PTSD as the nature of the injury.

In a letter dated March 6, 1990, to Hercules' counsel, Dr. Roebuck wrote, "It is my opinion that Mr. Gunther's post-traumatic stress disorder is related to his fear of death and his guilt feelings as a result of the fact that two of his friends were killed in the explosion." He further wrote, "Other facts . . . which I believe contributed to his stressful state when I first saw him . . . were many personal financial pressures." Dr. Roebuck informed the employer's counsel that he did not feel that Gunther's PTSD was not causally related to the physical injuries he sustained in the explosion. Finally, Dr. Roebuck concluded "that Mr. Gunther's post-traumatic stress disorder did not come on suddenly, but rather came over a course of a two or three week period or more." Gunther testified in depositions that his symptoms of PTSD had appeared just after the explosion and grew worse over a period of time.

Gunther took the position before Deputy Commissioner Costa that he was entitled to workers' compensation benefits based on alternative theories of accidental injury and/or occupational disease. Deputy Commissioner Costa awarded Gunther benefits based on accidental injury, and the commission affirmed.

Hercules contends that the commission erred in its award to Gunther of benefits because, pursuant to *Chesterfield County v. Dunn*, 9 Va. App. 475, 389 S.E.2d 180 (1990), as a matter of law, PTSD does not constitute an "injury by accident" pursuant to Code § 65.1-7, for which an employee may be entitled to workers' compensation benefits. Because the appellants misconstrue the holding in *Dunn*, we reject that contention.

In *Dunn*, we reversed an award by the commission to an emergency medical technician who claimed his PTSD was an "injury by accident" which had been caused by exposure to a severely injured victim. We held that Dunn's PTSD was not an "injury by accident" because he failed to prove any sudden mechanical or structural change in the body, *Dunn*, 9 Va. App. at 477, 389 S.E.2d at 182, and because he did not prove that his psychological disability resulted from his employment as defined in *Burlington Mills Corp. v. Hagood*, 177 Va. 204, 13 S.E.2d 291 (1941). *Dunn*, 9 Va. App. at 477-78, 389 S.E.2d at 182. We did not hold in *Dunn* that, as a matter of law, PTSD is not compensable as an

"injury by accident." We decline the appellants' invitation to so hold here.

Hercules further contends that the commission erred by arbitrarily disregarding uncontradicted credible evidence showing that Gunther's PTSD developed gradually over a period of time and erred by finding that Gunther had met his burden of proving "injury by accident," as required by Code § 65.1-7. More specifically, Hercules argues that, based on the holding in *Lane Co. v. Saunders*, 229 Va. 196, 199, 326 S.E.2d 702, 703 (1985), an employee claiming "injury by accident" must prove "an obvious sudden mechanical or structural change in the body," and Gunther produced no evidence of such sudden change. Hercules also argues that the commission arbitrarily disregarded uncontradicted evidence from Gunther and Dr. Roebuck, his treating psychiatrist, that Gunther's PTSD developed gradually over a period of time. We find this case to be controlled by *Burlington Mills v. Hagood*, 177 Va. 204, 13 S.E.2d 291 (1941); thus, since our holding affirms the commission's ruling that Gunther's PTSD was causally related to an obvious sudden shock or fright from his employment, we reject the contention that evidence shows that it was a condition which developed gradually.

On appeal, factual findings of the commission will not be disturbed if based on credible evidence. *Morris v. Badger Powhatan/Figgie Int'l, Inc.*, 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). The commission may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses, which is not inherently incredible and not inconsistent with other facts in the record. *Id.* Whether credible evidence exists to support a factual finding is a question of law which is properly reviewable on appeal. *See Ablola v. Holland Road Auto Ctr., Ltd.*, 11 Va. App. 181, 183, 397 S.E.2d 541, 542 (1990). Causation is a factual determination to be made by the commission, but the standards required to prove causation and whether the evidence is sufficient to meet those standards are legal issues which we must determine. *Morris v. Morris*, 238 Va. 578, 385 S.E.2d 858 (1989). In considering whether credible evidence exists to support the necessary factual findings, we view the evidence in the light most favorable to the party prevailing below. *Crisp v. Brown's Tysons Corner Dodge, Inc.*, 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986).

Both Deputy Commissioner Costa and the full commission found that Gunther had sustained an obvious sudden shock or fright from being thrown through the air by the explosion which caused his PTSD, and the commission ruled that Gunther's claim was compensable based upon the principles in the *Hagood* decision. Thus, we must consider the applicability of *Hagood* and whether credible evidence exists to support the finding that Gunther's condition was causally related to obvious sudden shock or fright of the explosion and the deaths of his friends in the explosion.

■ A panel of this court in *Chesterfield County v. Dunn*, 9 Va. App. 475, 389 S.E.2d 180 (1990), reaffirmed the principles established by the Supreme Court in 1941 in *Burlington Mills Corp. v. Hagood*, 177 Va. 204, 13 S.E.2d 291, for proving that psychological injury is caused by a work-related accident. In *Dunn*, we wrote: "To be compensable as an injury by accident, a purely psychological injury must be causally related to a physical injury or' be causally related to an obvious sudden shock or fright arising in the course of employment." 9 Va. App. at 477, 389 S.E.2d at 182. We further noted that the *Hagood* decision recognized "but one exception for [when] mental disabilities resulting from employment" are compensable. *Id.* Finally, we concluded that "we should not extend *Hagood* beyond its facts" by applying it to the facts of the *Dunn* case. *Id.* at 478, 389 S.E.2d at 182. We did not hold in *Dunn*, nor did we intimate, as Hercules asks us to hold, that the *Hagood* decision has been overruled or is no longer binding authority.[1] We noted in the *Dunn* holding that the *Hagood* decision sets forth the necessary criteria for purely psychological injuries to be compensable as injuries by accident within the meaning of Code § 65.1-7. We held that the claimant in the *Dunn* case had not proven an "injury by accident" under *Lane Co. v. Saunders*, 229 Va. 196, 199, 326 S.E.2d 702, 703 (1985), because he had not proven an obvious sudden mechanical or structural change in the body, nor had he come within the *Hagood* requirements of showing that his condition was causally related to a physical injury or causally related to "an obvious sudden shock or fright."

---

[1] To the contrary, legal commentators are in accord that the *Hagood* exception is alive and well. *See* 1B A. Larson, *The Law of Workmen's Compensation* § 42.23(a), at 7-904 (1991) (commenting favorably on *Hagood* and similar cases which permit recovery for work-related psychological injuries); L. Pascal, *Virginia Workers' Compensation: Law and Practice* § 3.3, at 56 (1986).

*Dunn*, 9 Va. App. at 477, 389 S.E.2d at 182. Dunn encountered a situation that was an expected occurrence in the performance of his duties as an emergency medical technician.

Viewing Gunther's evidence in the light most favorable to him as the prevailing party, it can be summarized as follows: Gunther, while employed as a truck driver by Hercules, Inc., was propelled through the air by an explosion which occurred on March 19, 1988, at the Hercules plant. He was thrown into a barricade. Two of his friends were killed in the explosion. Even though he returned to work the day after the explosion, he had missed time from work due to the incident. By the time he consulted Dr. Salinas on April 20, 1988, he had used most of his vacation time. He had been experiencing nervousness and inability to relax prior to this April 20, 1988, visit. Medical evidence was presented that Gunther was suffering from PTSD and that his PTSD was directly related to the explosion. Unlike the claimant in *Dunn*, whose PTSD developed after he viewed and worked with an accident victim, an incident which was part of the very nature of his employment as an emergency medical technician, Gunther's evidence proved that he suffers from PTSD, which is causally related to the obvious sudden shock or fright which he sustained in the course of his employment due to the explosion at the Hercules facility. Thus, credible evidence supports the finding that Gunther suffered from a compensable "injury by accident," as defined in the *Hagood* decision.

Hercules' argument that Gunther is not entitled to benefits because the evidence shows that his PTSD developed gradually is neither legally nor factually correct. Hercules contends that because the evidence shows that the post-traumatic stress disorder "did not come on suddenly, but rather came over a course of a two or three week period or more," that it developed gradually. In the *Hagood* case, the claimant was working at a machine when a loose wire in an electric motor, located some fifteen feet from her work station, caused a short circuit which produced an electric flash and sharp sound. The claimant, startled by the flash, started to fall backward and was rescued by another employee. She worked almost a full month after this incident, until she again saw the employee who had caught her, at which point she fainted and never returned to work. The Court expressly rejected the argument that her injury (traumatic neurosis) occurred when she saw

the fellow employee, long after the initial incident. The Court held "[t]he subsequent happening was but a reaction from the injury of the former day, and was an exhibited condition fairly and naturally traceable to a causative accident peculiar or adherent to the work in which she was engaged." *Hagood*, 177 Va. at 210, 13 S.E.2d at 293. Where a psychological injury is at issue, the fact that the condition manifests itself symptomatically at a time later than that at which the causative incident occurred is of no moment, provided that circumstances show an "identifiable incident [occurring] at a reasonably definite time" which causes the emotional injury.[2]

In light of the foregoing, we uphold the rulings of the commission that Gunther's PTSD was causally related to an obvious sudden shock or fright which he sustained in the course of his employment, and that he suffered a compensable "injury by accident" within the meaning of Code § 65.1-7. Accordingly, the award of workers' compensation benefits is affirmed.

*Affirmed.*

Koontz, C.J., and Elder, J., concurred.

---

[2] *Morris v. Morris*, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989), which held that the component of the injury by accident test requiring "an identifiable incident that occurs at a reasonably definite time," is "inevitably 'bounded with rigid temporal precision.'" *Morris* did not require a showing of immediate onset of the symptoms of the injury. *See Dunn*, 9 Va. App. at 478-80, 389 S.E.2d at 182 (Benton, J., concurring). The *Morris* decision requires only proof of an identifiable incident or sudden precipitating event "bounded with rigid temporal precision" so as to preclude coverage where the injury is caused by repetitive trauma or cumulative incidents.